# BARRETT *v.* COLUMBIA RAILWAY COMPANY.

STREET RAILWAYS; CONTRIBUTORY NEGLIGENCE; DIRECTING VERDICT.

1. Where it is charged in an action against a street railway company to recover damages for personal injuries, that the negligence of the defendant consisted in the failure of its motorman to ring his gong as he approached a crossing, the plaintiff should adduce testimony to prove a regulation, rule, or custom requiring the sounding of a bell or ringing a gong at such crossing, or that such signals should be given at every crossing of streets of the city, and under all circumstances.

2. The trial court properly directs a verdict for the defendant on the ground of the plaintiff's contributory negligence, in an action against a street railway to recover damages for personal injuries, when the testimony of the plaintiff shows that he was riding a bicycle slowly alongside a west-bound car of the defendant, and upon the car passing him he suddenly turned and attempted to cross the tracks in the rear of such car without taking the precaution to learn what he might encounter on the east-bound track, when he was struck by an east-bound car and injured, and where it appears that the street at the place of the accident was straight for a considerable distance, that the plaintiff's eyesight was good and there could have been no difficulty in seeing the approaching car if he had kept a careful lookout; *following* Harten v. Railway, 18 App. D. C. 260.

No. 1188. Submitted May 22, 1902. Decided June 24, 1902.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a

verdict directed by the court in an action to recover damages for personal injuries.        *Affirmed.*

The COURT in the opinion stated the case as follows:

This appeal is from the Supreme Court of the District of Columbia, taken by the plaintiff below, James Barrett, from a judgment entered for the defendant, the present appellee. The action was one for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant.

The defendant company owns and operates an electric street railway in the city of Washington, and at the time of the accident or occurrence of the injury sued for, it maintained and operated a double track of railway on H street, northeast, in this city, on the northerly of which tracks the cars run in a westerly direction, and on the south tracks in the reverse or easterly direction. The question in the case is as to the sufficiency of the evidence on the part of the plaintiff to sustain the alleged right of recovery.

The plaintiff, testifying for himself, says, that he is an engineer, and that on July 9, 1900, between 6 and 7 o'clock, P. M., he was riding home on his bicycle, which he had ridden for about two years, and that he was coming down the Bladensburg road at a moderate speed, and just before reaching the corner of the Bladensburg road and H street he noticed a car to the east of him, and not quite to Fifteenth street when he first saw it coming along the north or westbound track of the defendant's railway. That when he turned the corner he headed his wheel so as to cross over the street car tracks and go on out Maryland avenue home. He saw the west-bound car coming out, and he slowed up to let the car go by. The car, as he got close to it, also slowed up, but did not stop. The conductor gave the signal and it started off. He had to go a short distance alongside of the car. By this time he was going very slow and merely balancing his wheel. He rode along west with the car a short distance, until it passed far enough for him to go behind and cross the other tracks. He started to cross and to go

home out Maryland avenue when the east-bound car came along without any warning whatever, and struck his bicycle. He says there were no signals by bell or gong given prior to his being struck by the car. As he crossed the track the east-bound car struck him so quick that he did not have time to save himself; but as the car ran into his bicycle he grabbed the short chain which holds the fender to the car; and that he swung on to it, and it dragged him some distance,— he judged about ten or fifteen feet. His knee was thrown against the running board of the car and his hold was broken, and he fell to the ground between the two car tracks. The car passed on and then stopped. Several persons rushed to his assistance, and helped him up; he thinks he was eight or ten feet behind the car when it stopped. His bicycle was in the fender of the car; the car was a long, yellow, open summer car. He was taken to a hospital, and thence to his home, where he was confined to the house for about three months. In reply to a question as to how fast he was going while he was being dragged along, he said that the car was going ten miles an hour or so, when it struck his wheel, he should judge;— that it was on him before he could save himself. He says he generally crossed the track here (indicating where Maryland avenue meets H street); but as the car was coming he crossed further up to the west; and when asked what he saw as he turned from the Bladensburg road into H street, towards Maryland avenue, coming up H street, going east, and if there was anything there, he replied that he looked, but did not see any car coming.

On cross-examination, the plaintiff testified that his eyesight was good. That concerning the plaintiff riding alongside the west-bound car, he says that by the time he reached the west-bound track the west-bound car slowed up and moved very slow for about six or eight feet, and the conductor then signaled to go ahead, and as the car went by him, he started across and the east-bound car struck him.

He was then asked whether, before he crossed the east-bound track he looked to see if the car was approaching on that track, and he replied that he did; and when asked where

he was when he looked, he replied that it was as he came around Holland's corner, Bladensburg road, and H street; that he looked up H street, looking west, to see if an east-bound car was coming, and he did not see any. He was asked whether there were any vehicles on the street to obstruct his view, and he replied that there were none, nor anything else, to his knowledge. He says that there were very few vehicles on H street at the time, and that his view was unobstructed when he looked west.

He testified that if a signal had been given he would have had time to step off his bicycle; he was going at that rate of speed. He says that he crossed at that point twice a day coming from and going to his work; that he is perfectly familiar with the locality; that the street is straight, and that there is no curve in it towards the west.

In the course of further cross-examination the plaintiff testified as to the actual occurrence of the accident, as follows: " When the fore part of your wheel was on the south track — that is, the south rail of the west-bound track, and before you left that point to cross the track — did you look to see if the car was coming east?

"A. Yes; but it was too late. The car was on me. I passed behind the other car, and the car came right up on me.

" Q. So that, as I understand it, between the time you left this point, where you had an unobstructed view of the east-bound track, and the time you were struck, you did not look to see if the car was coming?

"A. As I was crossing the track I couldn't look because the other car was going west and headed me off.

" Q. How far was that west-bound car from you?

"A. As the car passed me I came right behind it with my wheel to cross over to Maryland avenue.

" Q. When you passed from behind the west-bound car could you not have seen it in time to have alighted?

"A. No, sir.

" Q. Did you look?

"A. I did, but it was so close on me that I didn't have time to alight." He further says that " the front wheel of his

bicycle was just over the rail; his body was not over the nearest east-bound rail when he was struck."

There were several other witnesses examined for the plaintiff, but, in their testimony, they added nothing in the way of material facts, to the facts proved by the plaintiff himself. There were police regulations put in evidence, by which it was shown, that, at the time of the accident, the rate of speed allowed for street cars was fifteen miles per hour in the country, twelve in the city, and six at street crossings; and also requiring cars to stop, when necessary, on the far side of the streets.

*Mr. Charles H. Merillat, Mr. James B. Archer, Jr.,* and *Mr. Wm. E. Ambrose* for the appellant:

1. A judge at the close of plaintiff's case never should direct a verdict for defendant on the ground of contributory negligence of plaintiff where there are, viewed in the most favorable light for the plaintiff, facts from which, with all reasonable inferences, the negligence of the defendant and the freedom from negligence of the plaintiff, may be inferred. It is for the jury to say whether they ought to be inferred. It is only where the evidence of contributory negligence is so clear that the judge would set aside any number of verdicts rendered contrary to his views that he would be justified in not permitting the jury to pass on the negligence of the respective parties. *Crue* v. *Caldwell,* 52 N. J. L. 215; *Met. R. Co.* v. *Jackson,* L. R., 3 App. Cas. 193; *Gardner* v. *Michigan Cent.,* 150 U. S. 349–361.

2. Where the evidence shows the exercise of some care on the part of plaintiff and that he was not reckless or indifferent to danger, it is for the jury to say whether under all the circumstances of the case he exercised that amount of care which an ordinarily prudent person would have exercised. The judge instructs on the kind of care required under the law, and the jury decides whether under the facts the requisite amount and degree of care has been exercised. Cases heretofore cited, and *Bohler* v. *Owens,* 60 Ga. 188; *Chaffee*

v. *Boston & L. R. Co.,* 104 Mass. 108; *Railroad Co.* v. *Gol-way,* 6 App. D. C. 143; *Railroad Co.* v. *Webster,* 6 App. D. C. 197; *Railroad Co.* v. *Hammett,* 13 App. D. C. 370; *Railroad Co.* v. *Stout,* 17 Wall. 657.

3. Cases are but few in which a court can say as matter of law that contributory negligence exists. Those are where circumstances are such that the standard of duty is fixed and defined by law and is the same under all the circumstances; or where the facts are undisputed, and but one reasonable inference can be drawn from them. *W. & G. R. Co.* v. *Grant,* 11 App. D. C. 107; *Railroad Co.* v. *Snashall,* 3 App. D. C. 420.

4. In considering the conduct of the plaintiff all the circumstances of the case should be taken into consideration, and due heed and weight given to the negligence of the defendant by reason of which the plaintiff may have been induced to believe it was safe for him to adopt a particular course. The duty of avoiding a collision should not be too exclusively imposed on plaintiff, and the defendant entirely relieved from responsibility by ignoring the acts or omissions on its part. If in the light of all the circumstances there is room for reasonable men to differ as to the existence of contributory negligence the question is for the jury. *Railroad Co.* v. *Hunter,* 6 App. D. C. 287. The effect of the cars standing or moving ahead of Barrett and shutting off his view and the failure of the east-bound car to sound any warning (p. 11) was for the jury to consider in passing on the plaintiff's act in imperiling himself. *Railroad Co.* v. *Webster,* 6 App. D. C. 197.

5. It is negligence to run cars at street crossings at a rate of speed in excess of police regulations. *Railroad Co.* v. *Golway,* 6 App. D. C. 143; *Gratrot* v. *Mo. Pac. R. Co.,* 116 Mo. 450; *M. K. & T.* v. *Reynolds,* 26 S. W. Rep. 879. To fail to keep a vigilant lookout at such crossings and especially when passing another car thereabouts for travelers, and to have the car under control at such crossings. Shearman & Redfield on Neg., vol. 2, pp. 869–872; *Consol. Ry. Co.* v. *Scott,* 58 N. J.; *Watson* v. *Minn. St. Ry.,* 53 Minn. 551.

And to omit, when one car is passing another at a street crossing on close parallel tracks, to sound the bell or gong or give warning to persons whose views may be obstructed by the car going from him that there is an oncoming car on the reverse track. Shearman & Redfield on Neg.; *Driscoll, Admx.* v. *Market St. Ry.,* 97 Cal. 553; *Omaha St. Ry. Co.* v. *Lohneisen,* 58 N. W. Rep. 535. An electric railway must increase its vigilance proportionately with the increased dangers arising from the increase in its motive power. *Cook* v. *Balto. Trac. Co.,* 80 Md. 553.

6. Street railways, unlike steam railways, have no paramount right to the use of the streets. *Railway Co.* v. *Hunter,* 6 App. D. C. 287; *Cooke* v. *Balto. Trac. Co.,* 80 Md. 553.

In Pennsylvania, it is held street railways have a paramount right to the use of the streets, and a verdict directed for defendant might be upheld possibly in that State, but to concede this doctrine does not apply in this jurisdiction and to direct a verdict against plaintiff in a case like Barrett's would be to say one thing and hold and rule another. Ordinary care in crossing their tracks is all that is required of travelers. The doctrine, stop, look, and listen is not applicable as a hard and fast rule to populous city streets over which electric railways run their cars. It is not negligence *per se* not to look both ways. Travelers have a right to rely to an extent on the usual signals, and those the company should give, for their safety. *Shea* v. *Railway Co.,* 50 Minn. 397; *Hall* v. *Railway Co.,* 1 Utah, 250; *Lynam* v. *Railway Co.,* 114 Mass. 83; *Newark Ry. Co.* v. *Block,* 26 Vroom, 605; *Rooks* v. *Houston R. Co.,* 10 N. Y. App. Div. 88; *Railway Co.* v. *Lusby,* 12 App. D. C. 295; *Watson* v. *Minn. St. Ry.,* 53 Minn. 551; *Omaha St. Ry.* v. *Lohneisen,* 40 Neb. 37; *Sanchez* v. *Railway Co.,* 3 Tex. Civ. App. 89.

7. Even as to steam railways it is not requisite that travelers at the very moment of going on the tracks shall look to see if a car is approaching where they have looked shortly before and received reasonable assurance no car was within a distance from which danger might be apprehended.

Especially is this so where the car gives no warning of its approach. *Chaffee* v. *Boston L. Ry. Co.*, 104 Mass. 108; *Wright* v. *C. N. & T. Ry.*, 94 Ky. 114; *Dublin & C. Ry. Co.* v. *Slattery*, 3 App. Cas. 1155; *Henavie* v. *N. Y. Cent. Ry. Co.*, 9 Am. Neg. Rep. 345.

8. The fact that the plaintiff is able to say positively no bell or warning sound was given or he would have heard it, is evidence he was listening (especially where all the testimony of other witnesses corroborates the statement no warning sound whatever was given), and would have heard had one been sounded where he was in position to hear. *Henavie* v. *N. Y. Cent. Ry. Co.*, 9 Am. Neg. Rep. 345–349.

9. The fact of the accident and that plaintiff was hit by a car on the opposite track after passing behind a car on the near track, does not, of itself, show he was guilty of contributory negligence. Ordinary care was all that was required of him, not such highest care as would make accidents impossible. It is not negligence *per se* to pass behind a car at a street crossing and proceed to cross the tracks where no warning is given of the onrush of a car on the opposite track. *Consol. Ry. Co.* v. *Scott*, 58 N. J. L. 682, and cases cited, *Dennis* v. *N. J. C. Ry. Co.*, 45 Atl. Rep. 807; *Schwarzbaum* v. *Third Ave. Ry. Co.*, 54 N. Y. App. Div. 164 (See note to case 9 Am. Neg. Rep. 145);*Henavie* v. *N. Y. Cent. Ry. Co.*, 9 Am. Neg. Rep. 345–349; *Driscoll, Admx.* v. *Market St. Ry.*, 97 Cal. 553; *Cits. Ry. Co.* v. *Ford*, 9 Am. Neg. Rep. 376; *Snell* v. *Railway Co.*, 54 Ohio St. 203–208; *Shea* v. *Railway Co.*, 50 Minn. 395; *Hall* v. *Railway Co.*, 1 Utah, 250; *Sanchez* v. *Railway Co.*, 3 Tex. Civ. App. 89.

10. Where plaintiff testifies that he did look and saw no car approaching, the fact that he was hit by a car on the opposite track coming from the direction whence he claimed to have looked, does not show that he did not in fact look when there is evidence that there was a temporary obstruction which might have hidden the approaching car from view, or blanketed it as it were. The question whether plaintiff should have foreseen the possibility of one or more out-

going or standing cars shutting off the view of an oncoming car was a question for the jury. (In fact as matter of law he was not required to look both ways.) See cases cited above under paragraph number 9 and *Tesch* v. *Mil. Elec. Ry. Co.,* 9 Am. Neg. Rep. 389; *Cin. St. Ry. Co.* v. *Whitcomb,* 66 Fed. Rep. 915; *Watson* v. *Minn. St. Ry.,* 53 Minn. 551.

11. The class of cases holding that notwithstanding plaintiff's claim he did look, the court will not permit the jury so to find, are cases where it is clear if plaintiff had looked he must have seen. In other words the court will not permit a plaintiff to take his case to the jury by a mere assertion that he looked when it is impossible he could have looked and not seen. That is not this case. *Freeman* v. *Railway Co.,* 174 U. S. 379; *Harten* v. *Railway Co.,* 18 App. D. C. 260.

12. To say that plaintiff's failure to see a car when he did look, is, as an indication of negligence, equivalent to a failure to see it when he did not look, is to ignore the self-evident difference between an affirmative attempt to avoid an injury and a reckless indifference to the happening of one. *Cooke* v. *Consol. Tract. Co.,* 80 Md. 557; *Chaffee* v. *Boston & L. Ry. Co.,* 104 Mass. 108.

*Mr. J. J. Darlington, Mr. C. C. Cole* and *Mr. R. B. Behrend* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The negligence attributed to the defendant, upon which the action is founded, consists in the alleged excessive speed of its cars, and the alleged failure of the motorman to ring his gong as he approached the crossing. The testimony of the witnesses as to the first of these grounds, would seem to be very indefinite; and as to the second ground, there was no testimony to prove any regulation, rule, or custom, requiring the sounding of a bell or ringing a gong at the crossings, or that such signals should be given at every crossing of streets

of the city, and under all circumstances. If such was the requirement it should have been shown in evidence.

At the close of the evidence for the plaintiff the defendant moved the court to instruct the jury that they should render their verdict for the defendant, and the court so instructed the jury, and the verdict was rendered accordingly. The plaintiff excepted to the instruction given; and the only question presented on this appeal is, whether the evidence was sufficient to support a verdict for the plaintiff, if one had been found for him.

The accident occurred in open daylight. The plaintiff was familiar with the location, and all its environments. We must suppose that he well understood the dangers of attempting to cross the double tracks of a street railroad on a bicycle, without first seeing that he could safely do so without coming in conflict with passing cars. In this case, the whole scene was open to the plaintiff, and he was required to exercise not only his senses of sight and hearing, but his common sense as well. Unfortunately for himself, he undertook to follow up, on the north side of the west-bound car for a short distance, and then suddenly to turn and attempt to ride across the tracks immediately behind the passing car, without knowing, or taking the precaution to learn, what he might encounter on the east-bound tracks. He certainly understood the danger that he incurred in making the attempt to cross the tracks under the circumstances as detailed by himself. In the western direction from the place of the accident, H street is straight for a considerable distance, and there could have been no difficulty in seeing the approaching car, if a proper and careful lookout had been observed. The plaintiff proves himself that his eyesight was good; and the only excuse that has been offered for his failure to see the approaching car on the east-bound track is that there was a car, or perhaps cars, standing on the tracks that obstructed his view. But this suggestion is plainly and directly negatived by the plaintiff's own testimony. He expressly says he observed no such obstruction to his view; and as cars were passing on both set of tracks, it would seem to have been im-

possible that such could have been the case. Whether there was actionable negligence on the part of the defendant in the production of the accident may admit of doubt; but that there was negligence on the part of the plaintiff in bringing upon himself the injury of which he complains, we think admits of no doubt. The case comes fully within the principle of the recent case decided by this court, of *Harten* v. *Railway Company,* 18 App. D. C. 260; and it is unnecessary to refer to other authorities. Upon the authority of that case the court below was well justified in directing the verdict for the defendant; and we must therefore affirm that ruling. The judgment is therefore affirmed.

*Judgment affirmed.*